IN THE UNITED STATES DISTRICT COURT FOR
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | NO. 3:21-cr-00288 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| ERIK MAUND | ) | |

**MEMORANDUM AND ORDER**

On November 29, 2021, Erik Maund and three co-conspirators were under indictment for charges arising out of the alleged kidnapping and murder of two victims in Nashville, Tennessee, in March 2020. (Doc. No. 3). On December 10, 2021, after Maund was arrested and while he was in the custody of law enforcement, Maund participated in a recorded interview with FBI Special Agent David Som and Supervisory Special Agent Brett Shields. (Government Exhibits 1, 2).

Maund moves "for the suppression of the interview in its entirety" on the basis that "there was no knowingly, intelligent, and voluntary waiver of his rights." (Doc. No. 200 at 3; Doc. No. 172). The Government argues suppression of the entire interview is inappropriate because Maund was properly advised of his *Miranda* rights and initially waived them. (Doc. No. 185). Accordingly, the Government submits that it is entitled to use statements made by Maund after he was advised of his *Miranda* rights, but before he expressly invoked his right to counsel.[1] The Court held an evidentiary hearing on the motion on January 25, 2023, during which the Government introduced audio and video recordings of the interview at issue. (*See* Doc. No. 247). For the reasons stated below, the Motion (Doc. No. 172) is **DENIED**.

---

[1] The Government represents that it does not intend to play for the jury a recording of Maund invoking his right to counsel. (Doc. No. 185 at 1). The Government further represents that, pursuant to *Doyle v. Ohio*, 426 U.S. 610 (1976), it does not intend to comment in opening statement or closing argument on Maund's silence during the interview. (*Id.*).

## I. BACKGROUND[2]

Before asking Maund questions about the alleged kidnappings or murders, FBI agents provided him with a written copy of the *Miranda* warnings. Agent Shields read Maund his *Miranda* rights, after which Maund initialed and signed the written copy of the *Miranda* warnings. The written *Minranda* warnings that Maund initialed and signed included the following language: "I have read this statement of rights and I understand what my rights are. At this time I am willing to answer questions without a lawyer present." (Doc. No. 185-2). After being advised of his rights, Maund engaged with the agents and answered questions. A few minutes later, Maund clearly and unequivocally invoked his right to an attorney.

## II. LAW

Under the Fifth Amendment, a suspect is guaranteed the right to remain silent and the right to the assistance of counsel during a custodial interrogation. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The *Miranda* warnings that must precede any police questioning of a person in custody are well known. *See Dickerson v. United States*, 530 U.S. 428, 443 (2000) ("*Miranda* has become embedded in routine police practice to the point where the warnings have become part of our national culture."). Under *Miranda*, "the prosecution may not use statements ... stemming from custodial interrogation of the defendant unless" law enforcement officials advised the defendant of his "right to remain silent, that anything he says can be used against him in a court of law, that he has a right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." 384 U.S. at 444, 479.

"Once *Miranda* rights are read, a suspect may either waive their rights or invoke them." *United States v. Williams*, 998 F.3d 716, 736 (6th Cir. 2021) (citing *Berghuis v. Thompkins*, 560

---

[2] Unless stated otherwise, the background facts are derived from the recordings of the interview introduced at the evidentiary hearing. (*See* Doc. No. 247).

U.S. 370, 381–384 (2010)). The Government has the burden of proving that a defendant validly waived his *Miranda* rights. *Berghuis*, 560 U.S. at 383. To establish a valid waiver, the Government must show that the waiver was made "voluntarily, knowingly and intelligently." *Williams*, at 736 (quoting *Miranda*, 384 U.S. at 444). "A waiver is voluntary where the suspect's decision to talk is 'the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *Wesson v. Shoop*, 17 F.4th 700, 704 (6th Cir. 2021) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). A waiver is made knowingly and intelligently it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421. To determine whether a waiver is valid, courts examine the totality of the circumstances primarily from the perspective of the police, such that where the police had no reason to believe that the defendant misunderstood the warnings, there is no basis for invalidating the *Miranda* waiver. *See United States v. Ramamoorthy*, 949 F.3d 955, 965 (6th Cir. 2020).

### III.     ANALYSIS

The question before the Court is whether Maund knowingly, intelligently, and voluntarily waived his *Miranda* rights. Considering the totality of the circumstances, the Court finds that the agents informed Maund of his *Miranda* rights and that Maund knowingly, intelligently, and voluntarily waived them.

Maund's waiver was voluntary because there is no evidence of intimidation, coercion, or deception. Maund alleges no coercion by physical violence or other deliberate means calculated to break his will. *See Colorado v. Spring*, 479 U.S. 564, 573–74 (1987). Nor is there evidence in the record that Maund's "will [was] overborne and his capacity for self-determination critically impaired because of coercive police conduct." *Id.* at 574. Accordingly, there is no indication that

3

the alleged waiver was involuntary. *See Wesson*, 17 F.4th at 704 ("A prerequisite to finding that a defendant involuntarily waived his *Miranda* rights is some element of official coercion.").

Maund knowingly and intelligently waived his rights. Maund signed a written form expressly acknowledging his understanding of his rights. (Doc. No. 185-2). Additionally, Maund's conduct before and during the interrogation is evidence that he understood his *Miranda* rights and the consequences of waiving those rights; he did not ask any questions about his rights or give any verbal or non-verbal indication that he did not understand his rights. Thus, at the time of the interrogation, the agents had no indication Maund's "age, experience, education, background, and intelligence" may have prevented him from understanding the *Miranda* warnings. *See Fare v. Michael C.*, 442 U.S. 707, 725 (1979). Maund's understanding and appreciation of the *Miranda* warnings is further supported by the fact that Maund clearly and unequivocally invoked his right to an attorney a few minutes *after* being advised of his rights. Thus, considering his background, experience, and conduct that night, as well as the fact that Agent Shields clearly and completely read his *Miranda* rights to him, Maund understood them. *See Ramamoorthy*, 949 F.3d at 965. As such, Maund implicitly waived his *Miranda* rights when he answered the agents' questions after being properly advised of his rights and indicating that he understood them. *Berghuis*, 560 U.S. at 384.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Maund's statements to the FBI agents during the custodial interview on December 10, 2021 were voluntary and preceded by knowing and intelligent waiver of his *Miranda* rights. Accordingly, the motion to suppress is **DENIED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE