UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) Case No. 3:21-CR-00288 |
| v. | ) |
| | ) JUDGE CAMPBELL |
| | ) |
| ERIK MAUND | ) |

## MOTION TO REVOKE ORDER OF DETENTION

COMES NOW, the Defendant, Erik Maund ("Mr. Maund"), by and through his counsel, pursuant to 18 U.S.C. §§ 3145(b), 3143, and 3142, respectfully moves this Honorable Court to reopen and reconsider its previously ruling (D.E. 205) adopting the Magistrate Judge's order of detention (D.E. 194) and allow him to be released with conditions pending his retrial. In support thereof, Maund states as follows:

### I. PROCEDURAL BACKGROUND

The posture of this case is unique.[1] At the time the Magistrate Judge determined that Mr. Maund should be detained, Mr. Maund was facing three distinct felony conspiracy charges: Murder For Hire, in violation of 18 U.S.C. § 1958; Kidnapping, in violation of 18 U.S.C. § 1201(a) and (c); and Kidnapping Death Resulting in violation of 18 U.S.C. 1201(a)(1) and (2). *See* D.E. 127. That is no longer the case. On November 15, 2025, following the close of the Government's case-in-chief, and on Mr. Maund's motion (*see* D.E. 425), the Court concluded that the Government had not presented sufficient evidence that Mr. Maund was part of any kidnapping conspiracy and dismissed that count pursuant to Fed. Crim. R. Pro. 29(a). On November 17, 2023, the jury returned its verdict, acquitting Mr. Maund of the 18 U.S.C. § 1201(a)(1) and (2) counts

---

[1] This Court is familiar with the facts and circumstances surrounding the single remaining count against Mr. Maund and the current posture of this action. In that regard, this motion forges a detailed description of the procedural background of this action.

1

(kidnapping, death resulting) and convicting him on the 18 U.S.C. § 1958 (murder for hire) count. *See* D.E. 437. The jury found the two other co-defendants guilty on all counts.

## II. ARGUMENT

### A. Legal Basis for Revocation of Detention Order

This Court may reconsider a prior order of detention "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." *United States v. Carter*, 2022 U.S. Dist. LEXIS 146697, *7 (N.D. OH., Aug. 16, 2022) quoting 18 U.S.C. §3142(f). Here, a first trial has already occurred, but the verdict was vacated by this Court's grant of a new trial. *See* D.E. 561. At this time a trial on the sole remaining count against Mr. Maund has not yet occurred. Mr. Maund has not been sentenced, and the government has filed a notice of appeal. Thus, under the operative provisions of § 3143(c), the Court therefore makes a determination on detention or release under 18 U.S.C. § 3142. *See, e.g. United States v. Davis*, 793 F.3d 712, 729 (7th Cir. 2015) ("[W]hen the government takes an appeal pursuant to section 3731, 18 U.S.C. § 3143(c) requires the district court to treat the defendant as if the case were still active and apply the criteria set forth in 18 U.S.C. § 3142"); *United States v. Workman*, 680 Fed. Appx. 699, 701–02 (10th Cir. 2017) ("Where the government takes an appeal from a suppression order [the effectively ends the prosecution], we generally treat the defendant as we would a pretrial defendant.")

While the government has appealed this Courts grant of a new trial, the "transfer of power … does not effect a total divestiture of jurisdiction from the district court [and t]he district court retains jurisdiction to enforce its judgment, to proceed with matters that will aid the appellate process, and to adjudicate matters unrelated to the issues on appeal. *United States v. Omar*, 157 F.

2

Case 3:21-cr-00288    Document 574    Filed 02/03/25    Page 2 of 13 PageID #: 6456

Supp. 3d 707, 713-714 (M.D. Tenn., 2016) (internal quotations omitted.) A defendant's "request for release is a matter unrelated to the merits of the appeal. *Id*. quoting *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Nat. Res.*, 71 F.3d 1197, 1203 (6th Cir. 1995). Accordingly, this Court has jurisdiction and turns to the merits of his reconsideration the previous order of detention based upon the evidence and results of trial.

**B.     The New Posture of this Case Warrants Reconsideration of the Court's Prior Order of Detention**

Importantly, there is substantially more information available to the Court that did not exist at the time of the detention hearing. When this Court ruled on its prior order of detention the government's case against Mr. Maund was far different than it is now. *First*, this Court heard all the evidence pertaining to Mr. Maund's involvement. He was not at the scene. He was not part of any conspiracy to kidnap. He was deceived by Mr. Peled – who himself deceived several former military officers who rendered services on a reduced rate for a purported human trafficking victim. The evidence of Mr. Maund's involvement differed greatly than Mr. Peled, Mr. Brockway, and Mr. Carey. *Second*, although the full extent of the conversation at the lunch meeting between Peled, Brockway, and Carey was not published to the jury, this Court was privy to information that corroborates Maund was treated differently by the codefendants. *Third*, this Court had the ability to observe Mr. Peled's demeanor and credibility – including his recantation of critical facts alleging Mr. Maund's involvement in the conspiracy which he admitted were not true. The magistrate at the detention hearing did not have the benefit of Mr. Peled's recantation and admission of dishonesty.[2] *Fourth*, substantial time has passed for the Court to ascertain Mr.

---

[2] As this Court saw when it observed Peled testify, he admitted to lying (*see* D.E. 458 atp. 231, PageID # 3489 ("And, yes, I lied about some stuff or some of the part of the -- my testimony.")) and providing different versions of events at the detention hearing compared to his testimony at trial (*see id.* at p. 152-153, PageID #: 3409-3410.) Given the importance of Peled's testimony at the original detention hearing, these admissions provide an additional basis for this Court to reconsider the prior order of detention.

3

Maund's law-abidingness while the case is pending. The harm presented to the magistrate at the detention hearing was Mr. Maund use of telephone calls and financial transactions and not direct acts of violence. There is no evidence that Mr. Maund has taken any action to obstruct justice since his lengthy period of pretrial detention.

None of these facts existed at the time of the Court's ruling on the prior order of detention. Given the jury's verdict, and the fact that Mr. Maund's conviction on a single count was the result of evidence that should not have been presented to the jury without Maund's introduction of additional evidence that would have demonstrated even less involvement in the conspiracy, it is far from a foregone conclusion that a subsequent jury will find Mr. Maund guilty of the sole remaining count against him.

These new facts warrant this Court's reconsideration of Mr. Maund's continued detention.

C. **The Order of Detention on the Sole Remaining Charge Should be Reversed Because Mr. Maund is Neither a Danger Nor a Flight Risk.**

While the remaining count against Mr. Maund is no doubt a serious one, the Court should consider this distinction in reconsidering Mr. Maund's detention: Mr. Maund's lack of involvement in the planning and execution of the crime alleged makes it more likely that this Court could craft a set of conditions that would assure the safety of the community and assure Mr. Maund's attendance at the next trial in this action. Moreover, the lack of evidence of further wrongdoing by Mr. Maund, either before or after his detention, tends to suggest that Mr. Maund's alleged actions were the result of the specific set of facts alleged in this action—facts which will not repeat themselves should Mr. Maund be released pending trial.

At the prior detention hearing, Mr. Maund proposed a set of conditions that would both protect the community and assure his attendance at trial. Specifically, Mr. Maund offered testimony from Rachele Smith, the President and CEO of Victim Safety First ("VSF"), a company

4

based in Austin, Texas, which contracts with Texas state and local governments to provide real-time GPS monitoring of individuals on pre-trial release. Ms. Smith described the device VSF uses to monitor releasees, including the technology used by the devices and the tamper resistant features. (D.E. 195, Transcript, PageID# 957-960). Ms. Smith also testified about the success of VSF's monitoring program, and the many thousands of releasees VSF has, and continued to monitor. (*Id*. at PageID #: 967-969). Finally, Ms. Smith describes the seriousness of the offenses that the releasees VSF monitors are accused of, including "murder of a pregnant woman and her unborn child" and other accused murders with "multiple priors." (*Id*. at PageID # 960.)

In addition to describing how VSF operates and its success in monitoring accused felons released pending trial, Ms. Smith also testified about her interactions with Maund and his family. Based on her interview of Maund, his family members, and her training and experience, Ms. Smith testified that she believed that his family would support him if he were released pending trial but would not aid him in any way if he sought to evade VSF's monitoring. (*Id*. at PageID # 961 - 963.) Ms. Smith also testified that she examined Maund's residence, and provided testimony about how her monitoring device could determine if Maund left his residence. Finally, Ms. Smith testified to her connections with law enforcement in the Austin, Texas area, and how those connections can further assure the successful monitoring of Maund. (*Id*. at PageID # 964.)

The Magistrate Judge's ruling did not directly address whether the monitoring proposed by Ms. Smith and VSF would address concerns about non-appearance or dangerousness, instead rejecting VSF's involvement out of concerns that Mr. Maund's ability to pay for VSF's services would implicated certain public policy concerns. *See* D.E. 193, PageID # 910-911, n. 19 ("… for the reasons already discussed, the Court rejects the availability of high-tech, high-dollar privately funded detention as an alternative to detention."). However, those concerns, grounded in decisions

from other districts and circuits, are out of alinement with the costs of detaining Mr. Maund and the factors that courts commonly consider when ruling on pre-trial detention.

*First*, as to cost, Ms. Smith testified that VSF's proposed round the clock monitoring at approximately $3000 a month. Based on the most recently available data, the Bureau of Prison's paid an average of $116.91 per day to house inmates in Bureau and non-Bureau (as is the case for Maund) facilities – or approximately $3,507 per month. *See* https://www.federalregister.gov/documents/2023/09/22/2023-20585/annual-determination-of-average-cost-of-incarceration-fee-coif (last accessed Jan 29, 2025). Assuming this average, the pretrial detention of Mr. Maund costs the United States $500 more a month than Mr. Maund would pay to be monitored by VSF while awaiting trial.

*Second*, the wealth and resources of ever defendant are inextricably linked any evaluation of whether that should be detained pending trial. A defendant that lacks the money to afford a land line or cell phone to check in with Pretrial Services is more likely to de detained than one who does. A defendant that owns their own home, where they can reside (perhaps under effective house arrest) while awaiting trial can present a more compelling argument for their release than an unhouse defendant living on the streets. A defendant who can call on the support of family members to provide a place to live or funds for a bond is more likely to be released than a defendant facing the same charges who lacks those resources. All of those resources—from a phone line, to a house, to money to post a bond—require wealth, and it is not uncommon for the government to argue that considerations that are inextricably intertwined with the lack of wealth warrant detention. While Mr. Maund's ability of pay for VSF's services may be out of reach for other defendants, a proposed order of conditions that includes third-party monitoring paid for by Mr. Maund should not be denied simply because he is able to pay for it.[3]

---

[3] Indeed, denying Mr. Maund's proposed order of conditions because it is something that may be beyond the reach of every defendant (rather than because the proposed conditions do not meet the 18 U.S.C. § 3142(g)) implicates

*Third*, the services proposed by Mr. Maund are not excessive. VSF provides monitoring for many thousands of individuals in Texas; monitoring that is many cases is paid for by those individuals. Mr. Maund, has not proposed "buying his way out of detention by constructing a private jail from the comfort of his home" as the Magistrate Judge expressed concern about. Rather, he proposed utilizing an effective and well-known third-party monitoring company that is routinely used by Texas state courts. Moreover, VSF is no more beholden to Mr. Maund than it would be to any individual that paid for its services. There was no evidence that Ms. Smith, or her company, would have any incentive to allow Mr. Maund to violate monitoring conditions that were placed on him, any more than she would for any of the releasees that VSF monitors. Indeed, given the size of VSF, and its close work with state and local governments, and the impact prisoner non-compliance would have, the exact opposite incentive exists.

*Fourth*, significant post-trial publicity has made Mr., Maund far more recognizable and less likely to be able to flee, even if her were included to do so. 20/20, a nationally televised TV news program created a two-hour special on this trial, prominently featuring Mr. Maund and evidence from the trial. *Texas Monthly*, a well-read Texas News Magazine, released a multi-episode podcast about Mr. Maund. Each of these widely distributed programs featured extensive evidence form the trial and included significant participation from the government prosecutors and agents involved in investigating and prosecuting Mr. Maund. This publicity, aided by the government, has made Mr. Maund even more recognizable than he otherwise may be, further reducing any risk that he would be able to abscond, assuming he was inclined to do so.

---

constitutional concerns, since Mr. Maund is being treated differently because of his economic status. *See Williams v. Ill.*, 399 U.S. 235, 244 (1970) ("We hold only that the Equal Protection Clause of the Fourteenth Amendment requires that the statutory ceiling placed on imprisonment for any substantive offense be the same for all defendants irrespective of their economic status.").

### D. Mr. Maund's Lengthy Detention Is Punitive and Violates Due Process

There is likely to be significant further delay as the result of the government's decision to appeal this Court's grant of a new trial. On September 17, 2024 – over four months ago – this Court vacated Mr. Maund's convictions and ordered a new trial for all the defendants in this action. *See* D.E. 562. On October 15, 2024, the government appealed that order. *See* D.E. 565. The government subsequently sought three extensions of the deadline to file its opening brief, before finally filing on January 29, 2025.

Given the complexity of the issues, it is entirely possible that appeal could occupy much of 2026. Moreover, while this Court ruled that the defendants were entitled to a new trial because of structural error, the government has argued the Court abused its discretion by not adhering to a harmless error standard – a standard the government claims the Sixth Circuit follows in interpreting situations where a jury views extraneous information. Even assuming the government is correct, the Sixth Circuit – alone among federal circuits – places the burden on the defendant to show prejudice in that context. Because the Sixth Circuit is a single-circuit outlier on an issue government has made the focus of its appeal, there remains the possibility that either the defendants, or the government, ultimately seek writ of *certiorari* with the Supreme Court, resulting in further delay in the ultimate adjudication of the single count now remaining against Mr. Maund. But regardless of what occurs the current posture of the case, and the government's decision to appeal this Court's grant of a new trial, will only result in further delay of the adjudication of the single remaining count against Mr. Maund.

Mr. Maund's lengthy detention has already become punitive and violative of due process, and this further delay will only make it more so. Personal liberty is one of the most foundational rights in our society and "long periods of pretrial detention are anathema to our basic notions of due process." *United States v. Gallo*, 653 F. Supp. 320, 343 (E.D.N.Y. 1986). It is well settled that

"pretrial detention violates the Fifth Amendment when it amounts to punishment of the detainee." *United States v. Watson*, 475 F. App'x 598, 601 (6th Cir. 2012) (quoting *Bell v. Wolfish,* 441 U.S. 520, 535 (1979)); see also *United States v. Tawfik,* 852 Fed. App'x 965, 965 (6th Cir. 2021) ("A lengthy pretrial detention can violate the Due Process Clause of the Fifth Amendment when it lasts long enough to become punitive."). The Sixth Circuit "consider[s] four factors when assessing an alleged due process violation: (1) the length of confinement; (2) the prosecution's responsibility for the delay; (3) the gravity of the charges; and (4) the strength of the evidence supporting the detention decision. *United States v. Adams*, 2024 U.S. App. LEXIS 431, *7 (6th Cir, Jan 5, 2024) (mooted on other grounds) quoting *United States v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000) (per curiam) The Court can consider both the "length of the detention that has in fact occurred or may occur in the future" and "the non-speculative nature of future detention." *United States v. Hare*, 873 F.2d 796, 801 (5th Cir. 1989)

Due process is necessarily a case-specific inquiry, as is the question whether regulatory pretrial detention has become punitive. *Watson,* 475 F. App'x at 601. At some point, pretrial detention may become so protracted as to violate due process and require release. *See United States v. Gonzales Claudio*, 806 F.2d 334, 341 (2nd Cir. 1986) ("Detention that has lasted for fourteen months and, without speculation, is scheduled to last considerably longer, points strongly to a denial of due process."); *United States v. Theron, 782 F.2d 1510, 1516 (10th Cir. 1986)* (explaining that "valid pretrial detention assumes a punitive character" and therefore "may violate due process" "when it is prolonged significantly"); see also *United States v. Briggs*, 697 F.3d 98, 103 (2d Cir. 2012) (recognizing that lengthy detentions can implicate due process concerns, stating that "the Constitution imposes no bright-line limit on the length of pretrial detention," and expressing concern about a nearly 26-month detention); see also *United States v. Ojeda Rios*, 846 F.2d 167, 169 (2d Cir. 1988) (thirty-two-month detention was long enough to violate due process and

necessitated the defendants release on conditions); *United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir.1986) ("[A]t some point due process may require a release from pretrial detention or, at a minimum, a fresh proceeding at which more is required of the government than is mandated by section 3142."). "The longer the detention, and the larger the prosecution's part in prolonging it, the stronger the evidence justifying detention must be if it is to be deemed sufficient to justify the detention's continuance." *Briggs*, 697 F.3d at 101.

Here, Mr. Maund has been in custody for over three years in a county-run facility two hours from Nashville, and many states removed from his home in Austin, Texas. It is exceptionally difficult for counsel to meet with Mr. Maund in preparation for trial, and due to his housing in Kentucky, is made no easier when counsel is in Nashville. Courts that have assessed lengthy pretrial detentions – like the one Mr. Maund has been subjected to – have held that "the longer the detention, the more weighty countervailing concerns must be." *Omar* at 716. Said another way, the second, third, and fourth *El-Hage* factors must strongly favor detention. *See* Adams (adopting the Second Circuit's El-Hage factors). Here they do not. The second factor is "the prosecution's responsibility for delay." *Id*. The ongoing delay that will only add to Mr. Maund's already lengthy pre-trial detention is the responsibility of the government, which has appealed this Court's grant of a new trial.[4] While the government has filed its opening brief, it moved for three extensions before doing so. Given the issues the government has raised, and the length of time for an appeal of this nature to be resolved, it is unlikely that any new trial will occur until 2026, at the earliest. This additional delay rests entirely with the Government. The third factor is "the gravity of the charges." *Id*. The single charge Mr. Maund faces is less severe than the three charges he was originally indicted for. Both the Court and the jury assessed the evidence and independently

---

[4] The delay following the jury's verdict is also not the responsibility of Mr. Maund. As the Court noted, an administrative mistake resulted the jury viewing unadmitted evidence (*see* D.E. 561), which in turn resulted in many months of post-trial litigation.

determined that Mr. Maund had far less involvement in the crimes at issue than the government claimed when he was indicted, and when this Court first considered his detention. The fourth factor is "the strength of the evidence supporting the detention decision." *Id*. Again this factor weighs in favor of Mr. Maund's release. Peled has admitted he lied (*see infra*, p. 3, n. 2), the evidence the government presented at trial was insufficient to sustain a conviction on either the kidnapping or kidnapping conspiracy count, and Mr. Maund's conviction the remaining count was inextricably tied to the jury's review of prejudicial evidence it never should have reviewed.

### E. Mr. Maund Is Amenable to Additional Conditions of Release Beyond Those He Has Already Proposed

In addition to the conditions and monitoring he has already proposed, Mr. Maund is amenable to additional conditions as this Court sees fit. Among other things, Mr. Maund is willing to (1) remove all computer equipment, tablets, smart phones and similar devices from his home; and (2) agree to place any assets currently in his name into the name of a trustee or similar third party administrator such that he has no personal access to any financial resources.[5] Mr. Maund is willing to agree to other conditions proposed by this Court or the government in addition to those set forth above.

---

[5] While he is the beneficiary of certain trusts, Mr. Maund has relatively few assets that are held in his name or controlled by him. The trusts that benefit Mr. Maund (and others) are not controlled by him, and he is unable to access any funds from them without the permission of the trustee. As part of any release, Mr. Maund would consent to the assignment of all remaining assets that are owned or controlled by him personally to a trust controlled by a separate trustee, or similar third party custodian such that he does not have control or unfettered access to any financial resources whatsoever.

**WHEREFORE, PREMISES CONSIDERED,** Mr. Maund moves this Court to reconsider its prior ruling and revoke his Order of Detention and release him on conditions.

Respectfully submitted,

**MINTON, BASSETT, FLORES & CARSEY**
*A Professional Corporation*
1100 Guadalupe
Austin, Texas 78701
Telephone: (512) 476-4873
Facsimile: (512) 479-8315

By: s/ *Samuel E. Bassett*
    SAMUEL E. BASSETT
    State Bar No. 01894100
    Email: sbassett@mbfc.com

    PERRY Q. MINTON
    State Bar No. 24063296
    Email: pminton@mbfc.com

**SUMPTER & GONZÁLEZ, L.L.P.**
3011 N. Lamar Blvd., Ste 200
Austin, Texas 78705
Telephone: (512) 381-9955
Facsimile: (512) 485-3121

By: s/ *David M. Gonzalez*
    DAVID M. GONZALEZ
    State Bar No. 24012711
    DAVID@SG-LLP.COM

**BARNES & THORNBURG, L.L.P.**
827 19th Avenue, Ste. 930
Nashville, Tennessee 372203
Telephone: (615) 621-6019

By: s/ *J.D. Thomas*
    John-David H. Thomas
    TN Bar No. 027582
    JD.Thomas@btlaw.com

**ATTORNEYS FOR DEFENDANT
ERIK MAUND**

## CERTIFICATE OF SERVICE

By my signature below, certify that on the 3rd day of February, 2025 a true and correct copy of Defendant's Motion to Revoke Detention Order was filed via the Court's ECF System which will distribute copies to all counsel of record.

    s/ *J.D. Thomas*
    J.D. Thomas